567 S.E.2d 602

**Sheryl Lynn JEWELL, Plaintiff Below, Appellant,**

v.

**Lisa FORD and Nationwide Mutual Insurance Company, Defendants Below, Appellees.**

No. 30037.

Supreme Court of Appeals of West Virginia.

Submitted Feb. 6, 2002.

Decided April 11, 2002.

Concurring Opinion of Justice Starcher July 11, 2002.

Paul W. Roop, II, Roop Law Office, P.L.L.C., Beckley, West Virginia, for Sheryl Jewell.

Anita R. Casey, Nancy K. McCoy, Mac-Corkle, Lavender & Casey, Charleston, West Virginia, for Nationwide Mutual Insurance Company.

PER CURIAM.

This case is before this Court upon appeal of a final order of the Circuit Court of Raleigh County entered on March 15, 2001. In that order, the circuit court granted sum-

mary judgment in favor of the appellee and defendant below, Nationwide Mutual Insurance Company (hereinafter "Nationwide") in this declaratory judgment action arising out of an automobile accident which was filed by the appellant and plaintiff below, Sheryl Lynn Jewell (hereinafter "Jewell").[1] Jewell alleged that Nationwide failed to make a "commercially reasonable" offer of additional, optional uninsured motorist coverage to her when she applied for automobile liability insurance, and therefore, should be ordered to provide her with the maximum uninsured motorist coverage required to be offered by law.

In this appeal, Jewell contends that genuine issues of material fact exist precluding summary judgment in favor of Nationwide. Jewell also contends that the circuit court erred by not granting her motion for summary judgment. This Court has before it the petition for appeal, the entire record, and the briefs and argument of counsel. For the reasons set forth below, the final order is reversed, and this case is remanded to the circuit court for further proceedings consistent with this opinion.

## I.

Jewell was injured in an automobile accident on February 16, 2000, when her vehicle was struck by Lisa Ford, an uninsured motorist. Jewell was driving a 1996 Suzuki Sidekick insured by Nationwide. Jewell's insurance policy, which she first obtained on August 12, 1996, provided uninsured motorist coverage limits of $25,000 per person for bodily injury liability, $50,000 per occurrence for bodily injury liability, and $25,000 for property damage.

Following the accident, Jewell made a claim for the uninsured motorist benefits. She then discovered that her coverage was inadequate and asserted that Nationwide had failed to make a commercially reasonable offer of higher limits of uninsured motorist coverage. On August 15, 2001, Jewell filed suit in the Circuit Court of Raleigh County

alleging, *inter alia*, that Nationwide, having failed to make a commercially reasonable offer with regard to uninsured motorist coverage, was obligated to provide uninsured motorist coverage to her in the amount of $100,000 per person, $300,000 per accident, and $50,000 for property damage.

Both parties filed motions for summary judgment on the coverage issue. By order dated March 7, 2001, the circuit court granted Nationwide's motion and denied Jewell's motion. On March 15, 2001, the circuit court entered an amended order which incorporated the March 7, 2001 rulings and rendered final judgment on behalf of Nationwide. This appeal followed.

## II.

We begin our analysis of this case by setting forth our standard of review. In Syllabus Point 1 of *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994), this Court stated that "[a] circuit court's entry of summary judgment is reviewed *de novo*." Pursuant to Rule 56 of the West Virginia Rules of Civil Procedure, summary judgment is required when the record shows that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In Syllabus Point 3 of *Aetna Casualty & Surety Co. v. Federal Ins. Co. of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963), this Court held that "[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." With these standards in mind, we now consider the parties' arguments.

Jewell first claims that genuine issues of material fact exist as to whether Nationwide made a commercially reasonable offer of uninsured motorist coverage up to the amounts required to be offered by law. Jewell also argues that genuine issues of material fact exist as to whether she made a knowing and intelligent rejection of higher limits

---

1. Jewell also filed a negligence claim against defendant Lisa Ford for personal injuries she suffered in the automobile accident. In addition, she made a claim of bad faith/unfair trade settle-ment practices against Nationwide. The trial court bifurcated these claims from the declaratory judgment action and issued a stay pending its resolution.

of uninsured motorist coverage. Thus, she contends that the circuit court erred by granting summary judgment in favor of Nationwide.

■■■ W.Va.Code § 33–6–31(b) (1995)[2] mandates that each policy of automobile insurance provide an option to the insured to purchase uninsured motorist coverage with limits which are above the mandatory uninsured coverage requirement.[3] In Syllabus Point 1 of *Bias v. Nationwide Mut. Ins. Co.*, 179 W.Va. 125, 365 S.E.2d 789 (1987), this Court held that "[w]here an offer of optional coverage is required by statute, the insurer has the burden of proving that an effective offer was made, and that any rejection of said offer by the insured was knowing and informed." This Court further held that "[w]hen an insurer is required by statute to offer optional coverage, it is included in the policy by operation of law when the insurer fails to prove an effective offer and a knowing and intelligent rejection by the insured." Syllabus Point 2, *Bias*.

Pursuant to W.Va.Code § 33–6–31d(a) (1993), optional limits of uninsured motorist coverage must be offered to the insured on a form which is prepared by the insurance commissioner.[4] In addition, W.Va.Code § 33–6–31d(b) states, in pertinent part:

2. W.Va.Code § 33–6–31 was amended in 1998; however, no changes were made to subsection (b).

3. W.Va.Code § 33–6–31(b) provides:

Nor shall any such policy or contract be so issued or delivered unless it shall contain an endorsement or provisions undertaking to pay the insured all sums which he shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle, within limits which shall be no less than the requirements of section two, article four, chapter seventeen-d of this code, as amended from time to time: Provided, That such policy or contract shall provide an option to the insured with appropriately adjusted premiums to pay the insured all sums which he shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle up to an amount of one hundred thousand dollars because of bodily injury to or death of one person in any one accident and, subject to said limit for one person, in the amount of three hundred thousand dollars because of bodily injury to or death of two or more persons in any one accident and in the amount of fifty thousand dollars because of injury to or destruction of property of others in any one accident: Provided, however, That such endorsement or provisions may exclude the first three hundred dollars of property damage resulting from the negligence of an uninsured motorist: Provided further, That such policy or contract shall provide an option to the insured with appropriately adjusted premiums to pay the insured all sums which he shall legally be entitled to recover as damages from the owner or operator of an uninsured or underinsured motor vehicle up to an amount not less than limits of bodily injury liability insurance and property damage liability insurance purchased by the insured without setoff against the insured's policy or any other policy. Regardless of whether motor vehicle coverage is offered and provided to an insured through a multiple vehicle insurance policy or contract, or in separate single vehicle insurance policies or contracts, no insurer or insurance company providing a bargained for discount for multiple motor vehicles with respect to underinsured motor vehicle coverage shall be treated differently from any other insurer or insurance company utilizing a single insurance policy or contract for multiple covered vehicles for purposes of determining the total amount of coverage available to an insured. "Underinsured motor vehicle" means a motor vehicle with respect to the ownership, operation, or use of which there is liability insurance applicable at the time of the accident, but the limits of that insurance are either: (i) Less than limits the insured carried for underinsured motorists' coverage; or (ii) has been reduced by payments to others injured in the accident to limits less than limits the insured carried for underinsured motorists' coverage. No sums payable as a result of underinsured motorists' coverage shall be reduced by payments made under the insured's policy or any other policy.

4. W.Va.Code § 33–6–31d(a) provides:

Optional limits of uninsured motor vehicle coverage and underinsured motor vehicle coverage required by section thirty-one [§ 33–6–31] of this article shall be made available to the named insured at the time of initial application for liability coverage and upon any request of the named insured on a form prepared and made available by the insurance commissioner. The contents of the form shall be as prescribed by the commissioner and shall specifically inform the named insured of the coverage offered and the rate calculation therefor, including, but not limited to, all levels and amounts of such coverage available and the number of vehicles which will be subject to the coverage. The form shall be made available for use on or before the effective date of this section. The form shall allow any named insured to waive any or all of the coverage offered.

The contents of a form described in this section which has been signed by an applicant shall create a presumption that such applicant and all named insureds received an effective offer of the optional coverages described in this section and that such applicant exercised a knowing and intelligent election or rejection, as the case may be, of such offer as specified in the form.

In granting summary judgment in favor of Nationwide in this case, the circuit court stated as follows:

Upon examination of the documents referred to in the findings of fact, the Court concludes, as a matter of law, that the Nationwide Insurance agent made an offer of optional uninsured motorist coverage to the plaintiff in a commercially reasonable manner. The agent provided the plaintiff with a form which clearly set forth the nature of the coverage offered and the applicable limits of the coverage offered. The form clearly and unambiguously offered the plaintiff the option of purchasing additional uninsured motorist coverage up to the limits of $100,000/300,000/50,000 as required by statute. The plaintiff signed the form directly below the following statements: "I have read the IMPORTANT NOTICE, attached, on Uninsured motor vehicle coverage and understand how this coverage works. I have been given the opportunity to select the optional limits of Uninsured motor vehicle coverage listed above and have selected the coverage that matches the box I have checked."

While it is undisputed that Nationwide made an offer of optional uninsured motorist coverage to Jewell using the insurance commissioner's form, this Court finds that there are genuine issues of material fact regarding whether Nationwide completed the form in such a manner that an effective offer was made and thus, whether Jewell made a knowing and intelligent waiver of the additional, optional uninsured coverage. Although Jewell signed the form presented to her by Nationwide, she did not select any type of coverage by checking a box as the form instructed. Nationwide argues that the absence of a check mark on the form beside any of the additional coverage amounts of-

fered means that Jewell selected her present coverage for uninsured motorist benefits. We do not agree.

Pursuant to W.Va.Code § 33-6-31(b), an insurer is required to offer an insured the option of purchasing uninsured motorist coverage in the amount of $100,000 per person, $300,0000 per accident, and $50,000 for property damage per accident **and** the option to purchase uninsured motorist coverage up to the dollar limits of the insured's liability coverage. *See* note 3, *supra*. In the case *sub judice*, Nationwide clearly offered Jewell uninsured motorist coverage in the amount of $100,000/$300,000/$50,000. This coverage and the applicable premium were listed under the "optional limits" section of the form. However, Jewell's "present coverage" of $25,000/$50,000/$25,000 was not listed under the "optional limits" section. Since Jewell's present coverage was not listed under the "optional limits" section of the form, we believe that a genuine issue of material fact exists as to whether an effective offer of optional uninsured motorist coverage was made in accordance with W.Va.Code § 33-6-31(b). Furthermore, even if an effective offer of optional uninsured motorist coverage was made to Jewell, we believe that a genuine issue of material fact exists as to whether she made a knowing and intelligent waiver of the additional, optional coverage. As discussed above, although Jewell signed the form, she did not indicate on the form that she was choosing her present coverage. Therefore, we find that the circuit court erred by granting summary judgment in favor of Nationwide.

In light of our finding that genuine issues of material fact exist, we further find Jewell's contention that the circuit court should have granted summary judgment in her favor to be without merit. Obviously, if genuine issues of material fact preclude summary judgment in favor of Nationwide, they also preclude summary judgment in favor of Jewell. Therefore, we remand this case to the circuit court for further proceedings.

We note though that should Nationwide fail to prove that an effective offer of optional coverage was made and/or that there was a knowing and intelligent rejection by the in-

sured, the coverage is included in the policy by operation of law. Syllabus Point 1, *Bias, supra*. In addition, "*W.Va.Code* 33–6–31(b) [1988], mandates that when an insurer fails to prove an effective offer and a knowing and intelligent waiver by the insured, the insurer must provide the minimum coverage required to be offered under the statute." Syllabus Point 2, *Riffle v. State Farm Mut. Auto. Ins. Co.*, 186 W.Va. 54, 410 S.E.2d 413 (1991).

Accordingly, for the reasons set forth above, the final order entered on March 15, 2001, is reversed, and this case is remanded to the Circuit Court of Raleigh County for further proceedings consistent with this opinion.

Reversed and remanded.

STARCHER, Justice, concurring.

(Filed July 11, 2002)

I concur with the majority's opinion, but I write separately to detail the factual background supporting the majority opinion's result.

Plaintiff Sheryl Lynn Jewell was seriously injured on February 16, 2000, when defendant Lisa Ford, who was driving drunk, lost control of her vehicle and slammed headlong into the plaintiff's vehicle. The plaintiff has been unable to walk on her own, run, or work since the collision.

The plaintiff applied for automobile insurance from defendant Nationwide Insurance Company ("Nationwide") in August 1996. The policy she purchased had uninsured motorist coverage in the amounts of $25,000.00 per person for bodily injury, $50,000.00 per occurrence, and $25,000.00 in property damage ("25/50/25").

At the time she purchased the coverage from Nationwide, the plaintiff was given a form regarding uninsured motorist coverage which was prescribed by the Insurance Commissioner. *See W.Va.Code*, 33–6–31d(a) [1993] ("Optional limits of uninsured motor vehicle coverage ... shall be made available to the named insured at the time of initial application ... on a form prepared and made available by the insurance commissioner."). The form was published by the Insurance Commissioner in Information Letter No. 88 in July 1993, and was the form required to be used so that an insurance company could make a commercially reasonable offer of coverage, and the policyholder can make a knowing and intelligent choice of coverage, as a matter of law. *See Bias v. Nationwide*, 179 W.Va. 125, 365 S.E.2d 789 (1987).

The Insurance Commissioner's form had blanks which required the insurance company to list the various amounts of uninsured motorist coverage being offered to the plaintiff, and the premiums for each type of coverage. Important to the instant case, the form had blanks which required the insurance company to list the plaintiff's current insurance coverage and the premiums she was currently paying.[1] The form states that the "company must complete the blank spaces below to create an effective offer in order for the consumer to exercise a knowing and intelligent selection."

When the plaintiff applied for insurance in August 1996, on the form under the heading "Your Present Coverage Is," Nationwide failed to complete the blanks indicating the plaintiff's current level of uninsured motorist coverage and the premiums she was paying. This failure to provide the plaintiff with information was critical to the plaintiff choosing only "25/50/25" in coverage.

Prior to August 1996, the plaintiff had been insured by another insurance company and had purchased uninsured motorist coverage from the other company. She paid $31.20 every six months for "20/40/10" coverage, information which was not given to her by Nationwide as required by the Insurance Commissioner. When the plaintiff applied for coverage in August 1996 with Nationwide, according to the briefs of the parties, she could have paid $29.70 to buy 100/300/10 uninsured motorist coverage from Nationwide. In other words, had the plaintiff been provided with information regarding her ex-

---

1. In Informational Letter No. 121, issued in July 2000, the Insurance Commissioner abolished the requirement for insurance companies to list the

"present coverage" of the prospective insurance applicant or policyholder.

isting level of uninsured motorist coverage, she could have knowingly considered that she could buy $80,000 more coverage than she had prior to August 1996 for $1.50 less.

Nationwide clearly failed to complete the form established by the Insurance Commissioner, and as a result the plaintiff did not make a knowing and intelligent waiver of her right to purchase additional coverage. I therefore concur with the majority opinion.