590 S.E.2d 704

**Sheryl Lynn JEWELL, Plaintiff Below, Appellant**

v.

**Lisa FORD and Nationwide Mutual Insurance Company, Defendants Below, Appellees**

No. 31403.

Supreme Court of Appeals of West Virginia.

Submitted Nov. 5, 2003.

Decided Dec. 4, 2003.

Paul W. Roop, II, Esq., Roop Law Office, P.L.L.C., Beckley, for Jewell.

Anita R. Casey, Esq., Donna S. Quesenberry, Esq., MacCorkle, Lavender, Casey and Sweeney, PLLC, Charleston, for Nationwide Insurance Co.

MAYNARD, Justice.

The appellant, Sheryl Lynn Jewell, appeals the order of the Circuit Court of Raleigh County, entered on October 11, 2002, which granted summary judgment to the appellee, Nationwide Mutual Insurance Company ("Nationwide"). Jewell asserts the circuit court erred by concluding that the reasoning of *Riffle v. State Farm Mut. Auto. Ins. Co.*, 186 W.Va. 54, 410 S.E.2d 413 (1991), applies to uninsured motorist coverage. We disagree and affirm.

## I.

## FACTS

The facts of this case were fully discussed in *Jewell v. Ford,* 211 W.Va. 592, 567 S.E.2d 602 (2002) (per curiam) (*"Jewell I"*). Jewell was injured in an accident on February 16, 2000 when her vehicle, a 1996 Suzuki Sidekick, was struck by Lisa Ford, an uninsured drunk driver. Jewell was insured by Nationwide. Her policy provided uninsured motorist coverage ("UM") limits of $25,000 per person for bodily injury liability, $50,000 per occurrence for bodily injury liability, and $25,000 for property damage.

Following the accident, Jewell made a claim for UM benefits. At that time, she discovered that her coverage was inadequate. She alleged that Nationwide failed to make a commercially reasonable offer of higher UM coverage limits. As a result, she filed a lawsuit in circuit court contending that Nationwide was obligated to provide UM coverage to her in the amount of $100,000 per person, $300,000 per accident, and $50,000 for property damage. Both Jewell and Nationwide filed motions for summary judgment. The circuit court granted summary judgment to Nationwide, and Jewell appealed to this Court.

On appeal, this Court reversed by finding that no dispute existed regarding whether Nationwide offered optional UM coverage to Jewell. The Court said, "Nationwide clearly offered Jewell uninsured motorist coverage in the amount of $100,000/$300,000/$50,000." *Id.,* 211 W.Va. at 596, 567 S.E.2d at 606.

However, the Court also found that genuine issues of material fact existed "regarding whether Nationwide completed the form in such a manner that an effective offer was made and thus, whether Jewell made a knowing and intelligent waiver of the additional, optional uninsured coverage." *Id.* Jewell signed the form provided by Nationwide; the problem was that she did not select any type of coverage by checking a box as the form instructed. Nationwide argued that the absence of a check mark beside any additional coverage amounts indicated that Jewell chose her present coverage for UM benefits. This Court disagreed stating that "[s]ince Jewell's present coverage was not listed under the 'optional limits' section of the form, we believe that a genuine issue of material fact exists as to whether an effective offer of optional uninsured motorist coverage was made[.]" *Id.* The case was remanded back to circuit court for further proceedings.

The parties conducted additional discovery. On September 9, 2002, Nationwide filed a second motion for summary judgment. Nationwide asked the circuit court to determine as a matter of law that the offer of UM coverage was commercially reasonable and that Jewell made a knowing and intelligent waiver of the additional, optional coverage. Alternatively, Nationwide asked the circuit court to find that if the offer was not commercially reasonable, then the amount of coverage to which Jewell is entitled is equal to the liability limits of her policy, the minimum required by W.Va.Code § 33–6–31(b) (1998).[1]

---

1. In *Jewell I,* the opinion refers to the 1995 version of this statute. The Legislature amended W.Va.Code § 33–6–31 in 1998, but no changes were made to subsection (b). Therefore, we will refer to the 1998 version in this opinion. W.Va. Code § 33–6–31(b) (1998) states in pertinent part:

   (b) Nor shall any such policy or contract be so issued or delivered unless it shall contain an endorsement or provisions undertaking to pay the insured all sums which he shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle, within limits which shall be no less than the requirements of section two, article four, chapter seventeen-d of this code, as amended from time to time: Provided, That such policy or contract shall provide an option to the insured with appropriately adjusted premiums to pay

the insured all sums which he shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle up to an amount of one hundred thousand dollars because of bodily injury to or death of one person in any one accident and, subject to said limit for one person, in the amount of three hundred thousand dollars because of bodily injury to or death of two or more persons in any one accident and in the amount of fifty thousand dollars because of injury to or destruction of property of others in any one accident: ... Provided further, That such policy or contract shall provide an option to the insured with appropriately adjusted premiums to pay the insured all sums which he shall legally be entitled to recover as damages from the owner or operator of an uninsured or underinsured motor vehicle up to an amount not less than

By memorandum order dated October 10, 2002, the circuit court (1) denied Nationwide's motion for summary judgment regarding whether a commercially reasonable offer was made to Jewell and (2) granted Nationwide's motion for summary judgment regarding the amount of coverage to which Jewell is entitled in the event that it is ultimately determined Nationwide failed to make a commercially reasonable offer and that Jewell's selection of coverage was not knowingly and intelligently made. The court determined that Jewell's UM coverage is equal to the amount of liability insurance which she purchased, in other words, $25,000/$50,000/$25,000. By order entered on October 11, 2002, the circuit court directed that this ruling was a final order. It is from this order that Jewell appeals.

## II.

## STANDARD OF REVIEW

"A circuit court's entry of summary judgment is reviewed *do novo*." Syllabus Point 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994). Moreover, Syllabus Point 2 of *Painter* states:

> " 'A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law.' Syllabus Point 3, *Aetna Casualty & Surety Co. v. Federal Insurance Co. of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963)." Syllabus Point 1, *Andrick v. Town of Buckhannon*, 187 W.Va. 706, 421 S.E.2d 247 (1992).

## III.

## DISCUSSION

The only issue presented in this appeal is whether the circuit court erred by finding that the amount of UM coverage to which Jewell is entitled, should she prevail at trial on the *Bias* issues, is an amount equivalent to the liability limits contained in her policy.[2] In *Bias v. Nationwide Mut. Ins. Co.*, 179 W.Va. 125, 365 S.E.2d 789 (1987), this Court determined that the insurer has the burden of proving that an effective offer was made and that any rejection of the offer was knowing and informed. Furthermore, "[w]hen an insurer is required by statute to offer optional coverage, it is included in the policy by operation of law when the insurer fails to prove an effective offer and a knowing and intelligent rejection by the insured." Syllabus Point 2, *id.*

Jewell argues that the minimum UM coverage which is included in the policy of insurance by operation of law, if she succeeds at trial on the *Bias* issues, is $100,000/$300,000/$50,000 or an amount equal to the liability limits purchased by the insured, whichever is greater. Nationwide, on the other hand, argues that the amount of coverage provided by operation of law is the minimum amount of optional UM motorist coverage required to be offered by statute, that is, an amount equivalent to the liability limits of the policy.

This question was posed in *Riffle v. State Farm Mut. Auto. Ins. Co.*, 186 W.Va. 54, 410 S.E.2d 413 (1991), in the context of underinsured motorist coverage ("UIM"). In *Riffle*, Jason Riffle's friend was driving Mrs. Riffle's car when the pair had an accident in which Jason Riffle was injured. After collecting liability insurance, the Riffles sued their insurer seeking UIM coverage on each of four other automobile liability policies. The liability limits on each of the four policies were $25,000 per person and $50,000 per occurrence. The Riffles had previously declined their insurer's offer of UIM coverage on each of the policies for $100,000 per person and $300,000 per occurrence; however, a jury decided the rejection was not knowing and informed. Thus, the circuit court ordered the insurer to pay $100,000 per person UIM coverage on each of the four policies. The parties then stipulated a certified question

---

limits of bodily injury liability insurance and property damage liability insurance purchased by the insured without setoff against the insured's policy or any other policy.

2. Jewell also assigns as error, but does not seriously contend, that the circuit court erred by not granting *sua sponte* her prior motion for summary judgment.

asking this Court to determine how much UIM coverage was available.

The *Riffle* Court reasoned as follows:

The plain language of *Bias* provides that if an insurer fails to prove an effective offer and a knowing waiver of the statutorily required coverage, then *that coverage* becomes part of the policy by operation of law. "That coverage" is the amount of coverage that the insurer is required to offer under the statute. The statute requires the insurer to offer underinsured motorist coverage "up to an amount not less than the limits of bodily injury liability insurance and property damage liability insurance." In the case of the four policies owned by the Riffles, these limits were $25,000 and $50,000. Accordingly, the plain language of the statute required State Farm to offer underinsured motorist coverage of $25,000 per person and $50,000 per occurrence. When State Farm could not prove a valid offer and a knowing rejection, the statutory requirement became a part of each policy by operation of law.

*Id.,* 186 W.Va. at 55–56, 410 S.E.2d at 414–15. Jewell believes that this reasoning is correct and should not be overturned as it relates to UIM coverage. However, regarding UM coverage, Jewell contends that every insured must be offered $100,000/$300,000/$50,000, and if an insured chooses liability limits which are less than this amount, then $100,000/$300,000/$50,000 UM coverage is included in the policy if an insurer fails to prove a valid offer and a knowing rejection. Jewell states that she believes this is so because "*Bias* holds that the amount which is required to be offered shall be included in the policy as a matter of law if an ineffective offer/acceptance is made."

■ Jewell's reasoning is not persuasive. "Code § 33–6–31(b) addresses both uninsured and underinsured motorist coverage." *Bias,* 179 W.Va. at 126, 365 S.E.2d at 790. "*W.Va.Code* 33–6–31(b) [1988], mandates that when an insurer fails to prove an effective offer and a knowing and intelligent waiver by the insured, the insurer must provide the minimum coverage required to be offered under the statute." Syllabus Point 2, *Riffle v. State Farm Mut. Auto. Ins. Co.,* 186 W.Va. 54, 410 S.E.2d 413 (1991). Jewell would have us hold that the maximum amount of coverage is required to be provided under the statute.

W.Va.Code § 33–6–31(b) (1998) mandates that an insurance company must *offer* an insured uninsured motor vehicle coverage

up to an amount of one hundred thousand dollars because of bodily injury to or death of one person in any one accident and, subject to said limit for one person, in the amount of three hundred thousand dollars because of bodily injury to or death of two or more persons in any one accident and in the amount of fifty thousand dollars because of injury to or destruction of property of others in any one accident[.]

The statute unequivocally goes on to provide

That such policy or contract shall provide an option to the insured with appropriately adjusted premiums to pay the insured all sums which he shall legally be entitled to recover as damages from the owner or operator of an uninsured or underinsured motor vehicle *up to an amount not less than limits of bodily injury liability insurance and property damage liability insurance purchased by the insured* without setoff against the insured's policy or any other policy. (Emphasis added).

■ Therefore, we hold that when an insurer fails to prove an effective offer and a knowing and intelligent waiver under W.Va. Code § 33–6–31(b) (1998), the minimum uninsured or underinsured coverage required to be included in the insured's policy by operation of law is a sum recoverable as damages "up to an amount not less than limits of bodily injury liability insurance and property damage liability insurance purchased by the insured." This language clearly means that the minimum uninsured or underinsured coverage included in the insured's policy under these circumstances is an amount equal to the bodily injury liability insurance and the property damage liability insurance actually purchased by the insured. In Jewell's case, the circuit court correctly determined that the amount of UM coverage which Nationwide must make available is $25,000/$50,000/

$25,000 for the reason that said amounts are not less than the limits of bodily injury liability and property damage liability insurance actually purchased by the insured.

We conclude that the circuit court correctly determined that Nationwide's motion for summary judgment should be granted regarding the amount of coverage Jewell "is entitled to in the event that it is determined that Nationwide failed to make a commercially reasonable offer and Plaintiff's selection of coverage was not knowing and intelligent[.]" The circuit court properly declined to grant summary relief on the question of whether an effective offer and a knowing and intelligent waiver was made.

For the foregoing reasons, the judgment of the Circuit Court of Raleigh County is affirmed.

Affirmed.